LYKES BROS. STEAMSHIP CO., Inc., Petitioner,

v.

Hon. Sidney SUGARMAN, United States District Judge, Respondent.

LYKES BROS. STEAMSHIP CO., Inc., Petitioner,

v.

Hon. Gregory F. NOONAN, United States District Judge, Respondent.

Dockets 25897, 25898.

United States Court of Appeals Second Circuit.

Argued Nov. 2, 1959.

Decided Dec. 4, 1959.

Hincks, Circuit Judge, dissented.

Arthur M. Boal, Jr., of Tompkins, Boal & McQuade, New York City, for petitioner.

Thomas J. Doyle, of Cooper, Ostrin & De Varco, New York City, for Lebert Bihm, plaintiff.

Before CLARK, Chief Judge, and HINCKS and WATERMAN, Circuit Judges.

CLARK, Chief Judge.

These are petitions for mandamus to compel the transfer under 28 U.S.C.A. § 1404(a) of a seaman's actions against the petitioner from the United States District Court for the Southern District of New York to that of the Eastern District of Louisiana. In the action which was later brought and involved a later injury than did the other, but

which came on first on the motion to transfer, Civ. No. 137–258, Judge Sugarman wrote a reasoned opinion explaining his exercise of discretion to deny the transfer; and this he amplified in a second opinion denying reargument. In the other case, Civ. No. 130–12, Judge Noonan denied a like motion in a short memorandum which referred to Judge Sugarman's reasons for allowing the action to remain in the forum chosen by the plaintiff and then said: "I have not only these reasons which are sufficient in and of themselves, but also the fact that this other action will be tried in this court to aid me in my determination." We are now called upon in each case to review and reverse this exercise of discretion. Whatever might be the individual views of the majority with reference to the proper place of trial as an original issue, we both feel that we should not thus reject the considered conclusions of two careful and experienced district judges in a matter so peculiarly one for the exercise of judgment by those in daily proximity to these delicate problems of trial litigation. Indeed, to the writer of this opinion at least, it would appear that our learned brothers have acted wisely and responsibly.

The papers presented on these petitions appear to be somewhat skimpy and sketchy. But they show that Lebert Bihm, a seaman in defendant-petitioner's employ, has instituted two actions for successive injuries, sustained because of defendant's negligence and the lack of seaworthiness of its ships. The first injury occurred on September 12, 1957, in the harbor of Kaohsiung, Formosa, on the S.S. Margaret Lykes and was caused by reason of the vessel's greasy and oily deck. Plaintiff was treated in a hospital in Formosa for two days; he then returned to his ship and sailed to Manila, where he left it for further hospital treatment. After completion of this treatment he was brought back by plane to New Orleans on October 11, 1957, and thereafter had further treatment at the United States Public Health Service Hospital at New Orleans. He brought his first action on February 13, 1958, and issue has been joined by the service of an answer. Defendant moved to transfer on March 19, 1959, and this was denied by Judge Noonan on May 29, 1959.

In the second action, commenced on September 5, 1958, Bihm claimed damages for injuries sustained on the S.S. William Lykes while on the high seas en route to Genoa, Italy, where he was hospitalized on arrival on April 25, 1958. He also claimed maintenance and cure. When he returned to the United States he reported to the United States Public Health Service Hospital at New Orleans, where he was marked fit for duty on the same day after an examination. Issue was joined in the action by answer served on February 11, 1959, and defendant made its motion for transfer on February 26, 1959. Judge Sugarman's original denial of the motion was on April 23, 1959, and his order adhering to this decision on reargument was on May 14, 1959.

We should first note the proper limitations on our power of review, set in this type of proceeding so obviously a substitute for the interlocutory appeal not allowed by law. Thus it is forcibly stated in Ex parte Fahey, 332 U.S. 258, 259–260, 67 S.Ct. 1558, 91 L.Ed. 2041, that mandamus, prohibition, and injunction against judges "are drastic and extraordinary remedies" and as such "they are reserved for really extraordinary causes." The Eighth Circuit says bluntly: "We do not regard controversies between litigants, and between their counsel, as to where a case can most conveniently, fairly, efficiently and economically be tried as 'really extraordinary.'" Great Northern Ry. Co. v. Hyde, 8 Cir., 238 F.2d 852, 857, adhered to 8 Cir., 245 F.2d 537, certiorari denied 355 U.S. 872, 78 S.Ct. 117, 2 L.Ed.2d 77. Like warnings against this type of interlocutory review have been forcibly stated in various cases, such as In re Josephson, 1

Cir., 218 F.2d 174, 183, and Clayton v. Warlick, 4 Cir., 232 F.2d 699, 706, while the governing principle on transfers was set forth some years ago in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055, thus: "But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."

Possibly some courts may grant the writ more liberally than others, as the sharp difference of view in Ford Motor Co. v. Ryan, 2 Cir., 182 F.2d 329, certiorari denied 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624, suggests; but both reason and precedent limit the grant to unusual cases. Against this background it would be strange, if not daring, for an appellate court to rule substantially as a matter of law that a seaman's claim for injuries—that most transitory of all actions usually heard in whole or part on deposition evidence—must be considered chained to a single spot, to wit, the home base of the employer. The result becomes all the more *outré* when it is noted that the accidents and resulting hospitalization occurred in distant parts of the world—surely as close for litigatory purposes to New York as to New Orleans—namely, Formosa, Manila, and Genoa. Let us therefore examine the parties' claims a little closer.

In each action Bihm asserts that he will have the benefit of testimony by a New York doctor—a different one in each action—who has examined him and who is prepared to testify as an expert. In the first and apparently the more important action he gives as his witnesses an able-bodied seaman whose last known address was Wilmington, California, and a boatswain whose last known address was New Orleans. In the second action it appears that three of the witnesses defendant expects to use are residents of Texas. On this general showing plaintiff's choice of New York as a forum seems at least understandable. Our experience teaches that although vitally necessary it is often not easy for a seaman to obtain the counsel and medical support which he trusts; when he has obtained both it is not unnatural that he wishes to utilize them as fully as he can. Against this defendant argues that both parties are Louisiana citizens and that New Orleans is a more convenient place of trial than New York because hospital records, treating physicians, its own records with reference to the payment of maintenance and cure, and sundry witnesses are more easily available there.

Examining the petitioner's contentions more closely it would appear probable that it does show greater convenience for itself in having the litigation at its home base. But certainly litigation in this district is not unusual for it; jurisdiction here with a local office in the city is so clear that it is not challenged, and the reported cases suggest even more litigation for it in our courts than elsewhere.[1] As to hospital records, those in New Orleans do not seem by any means the most important of the several involved. In any event, since such records are quite freely admissible, see Lorensen v. Sinclair Refining Co., 2 Cir., 271 F.2d 528, and cases cited, little more is needed than a pretrial order to produce them; and the same would be true as to the records of payment of maintenance. The testimony of doctors in New Orleans seems offset by the testimony of the doctors secured by the plaintiff in New York City.[2] As to the other witnesses, apparently members of the crews of the two ships, it seems that comparatively

---

1. Note *inter alia* such important cases as Commercio Transito Internazionale, Limited v. Lykes Bros. S.S. Co., 2 Cir., 243 F.2d 683; Diaz v. Lykes Bros. S.S. Co., 2 Cir., 229 F.2d 269; Jones v. Lykes Bros. S.S. Co., 2 Cir., 204 F.2d 815, certiorari denied 346 U.S. 857, 74 S.Ct. 72,

98 L.Ed. 370; and Walker v. Lykes Bros. S.S. Co., 2 Cir., 193 F.2d 772.

2. An attempt is made to denigrate the testimony of medical experts as "non-essential" or otherwise in some way second grade. This of course is unrealistic so

few actually claim New Orleans as home; others come from Texas, Mississippi, California, and so on, with some actually from New York. Defendant says it can produce the witnesses it needs more readily in New Orleans. But we do not believe that transfer "in the interest of justice," 28 U.S.C. § 1404(a), should be determined by a litigant's willingness to bring its witnesses to one forum and not to another. In all probability the testimony of these witnesses who sail the high seas will have to be taken by deposition anyhow, on some occasion when they happen to be available on shore leave.

■■■ All in all this seems a good example of a situation where "the doubtful omniscience" of reviewing courts should not obtrude to override findings of trial courts as to what the interests of justice require. See Wright, The Doubtful Omniscience of Appellate Courts, 41 Minn.L.Rev. 751, 776, 777 (1957), also quoting from Professor Green's comments in Jury Trial and Mr. Justice Black, 65 Yale L.J. 482, 494, n. 36 (1956), on this transfer statute: "As a *delaying* tactic it has few equals; as a *control* of jury trial its significance is unfathomable" —comments perhaps apt here in view of the delay already occasioned. We cannot say that justice absolutely requires a New Orleans trial; possibly to seamen the idea of justice may be better subserved by avoiding overrigid control of their choice of forum.

Petitions denied.

HINCKS, Circuit Judge (dissenting).

It is true that the plaintiff under the venue statutes had a choice of venue either in New York or in Louisiana. But even before the enactment of the Transfer Act, 28 U.S.C.A. § 1404(a), the Supreme Court held that the plaintiff's choice of forum might be replaced when,

of the numerous factors bearing on the determination of the most appropriate forum, "the balance is strongly in favor of the defendant." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055. And by the enactment of the Transfer Act, the Supreme Court has said, Norwood v. Kirkpatrick, 349 U.S. 29, at page 32, 75 S.Ct. 544, at page 546, 99 L.Ed. 789, "Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a *lesser showing of inconvenience.*" (Emphasis supplied.) This, in context, plainly meant that under the Transfer Act the plaintiff's naked choice of forum was of less weight in reaching the decision.

Of the various factors bearing on the determination, cf. Gulf Oil Corp. v. Gilbert, supra, it was urged in each of the two cases now at bar that the plaintiff's choice of forum was supported by the fact that he had been examined by a New York physician who would appear as an expert witness for him. But in Gulf Oil the Supreme Court, in reversing this court, held that the district court *was correct* in replacing the plaintiff's choice of forum. After noting that the *sole* contact of the case with the chosen forum was the residence of some of plaintiff's expert witnesses, the Court concluded that the "Virginia plaintiff [was] without even a suggested reason for transporting this suit to New York." And convenience of expert witnesses has uniformly been treated as a consideration of little or no significance. McCarley v. Foster-Milburn Co., D.C.W.D.N.Y., 89 F.Supp. 643, reversed on other grounds, Foster-Milburn Co. v. Knight, 2 Cir., 181 F.2d 949; Southern Railway Company v. Madden, 4 Cir., 235 F.2d 198, certiorari denied 352 U.S. 953, 77 S.Ct. 328, 1 L.Ed.2d 244; Magnetic En-

far as actual litigation is concerned, and the discretion of the trial judge ought not to be limited by some theoretical gradation of witnesses without signifi-

cance to the actual case before him. The few uncertain precedents relied on do not actually support such downgrading of necessary witnesses.

gineering & Mfg. Co. v. Dings Magnetic Separator Co., D.C.S.D.N.Y., 86 F.Supp. 13, modified 2 Cir., 178 F.2d 866. When such convenience is the sole factor supporting the plaintiff's choice and other factors "are strongly in favor of the defendant" I "cannot imagine a case more clearly calling for the exercise of the power of transfer conferred by the statute; and not to transfer it was, * * * not a sound exercise of discretion." Southern Railway Company v. Madden, supra, 235 F.2d at page 201. In the cases now before us there was no other fact supporting the plaintiff's choice of forum in the sworn affidavits and none was referred to in the opinions below denying the motions. In his brief it was said that the plaintiff expected to call witnesses residing in Louisiana and California. But there was no showing that they could not as readily be called to New Orleans as to New York.

The defendant, on the other hand, showed that both the plaintiff and defendant were domiciled in Louisiana and that all its witnesses, including those the plaintiff expects to call, were residents of the State of Louisiana or will be subject to subpoena there by reason of their employment upon vessels having that city as their home port and regular port of call and that they do not sail on vessels having a scheduled call at New York; that the hospital records and treating physicians are all located in New Orleans; that the defendant's records and personnel located at New Orleans will be required for trial on the issue of allegedly unpaid maintenance and cure.

The trial judges' opinions suggested that the convenience to the defendant of a Louisiana forum where its witnesses and records would be conveniently accessible and amenable to subpoena was not a relevant factor on the transfer motion since the witnesses and records could be transported to New York or testify by deposition. I cannot agree. In my opinion, the balance of convenience and considerations of justice were overwhelmingly in favor of transfer to Louisiana where the fact witnesses as well as the physicians who treated the plaintiff will be available for actual production in court.

I can only attribute the decisions below to misconception of the relevant factors or to failure to exercise the discretion conferred on the court by the Transfer Act. It is true that there are many conflicting views in this field, as Judge CLARK'S opinion shows. See also the comprehensive note in 67 Yale L.J. 122. But in my opinion, upon the denial of a transfer when, as here, the overwhelming balance of trial convenience supports a transfer and only by a transfer can the parties have assurance of opportunity by subpoena to produce the live testimony of fact witnesses and treating physicians before the trial court, the case is so extraordinary as to call for the extraordinary remedy that only mandamus can afford. The holdings and rationale of the following authorities support this view. La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290; Bankers Life & Casualty Co. v. Holland, 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106; Ex parte Fahey, 332 U.S. 258, 67 S. Ct. 1558, 91 L.Ed. 2041; Roche v. Evaporated Milk Association, 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185; Ex parte Simons, 247 U.S. 231, 38 S.Ct. 497, 62 L.Ed. 1094; Ford Motor Co. v. Ryan, 2 Cir., 182 F.2d 329, certiorari denied 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624; Arrowhead Co. v. The Aimee Lykes, 2 Cir., 193 F.2d 83, note 4; Littman v. Bache & Co., 2 Cir., 246 F.2d 490, 491; Southern Railway Company v. Madden, supra; Reade Shirts, Inc. v. Commonwealth Ins. Co., D.C. S.D.N.Y., 102 F.Supp. 941; 6 Moore's Fed.Prac. ¶54.10[4] and [6]. In refusing the writ here, I think this court shirks its responsibility for a "supervisory control of the District Courts" which the Supreme Court has said "is necessary to proper judicial administration in the federal system." La Buy

v. Howes Leather Co., supra, 352 U.S. at pages 259–260, 77 S.Ct. at page 315.

The majority concludes with a note of concern lest the practice of review by mandamus will interject delay in processing litigation to its final disposition and points to the delay in this case. Such concern seems to me unfounded, 67 Yale L.J. at 131, 133, and it is irrelevant to this case. For there is absolutely no showing that the actions cannot even yet be tried as expeditiously in New Orleans as in New York. On the contrary, the showing made as to the availability of the witnesses in New Orleans suggests that trial there might be even more expeditiously had.

I would issue the writ and direct the transfer.