Craig BABBIDGE, Plaintiff,

v.

APEX OIL COMPANY, Crest Tankers, Inc., Clayton Tankers, Inc. and S/T ST. EMILION, Defendants.

No. 87 Civ. 3818(RJW).

United States District Court, S.D. New York.

Dec. 30, 1987.

Michael X. Savasuk, Portland, Me., and Hill, Betts & Nash, New York City (Gregory W. O'Neill, Richard A. Senftleben, of counsel), for plaintiff.

Freehill, Hogan & Mahar, New York City (Patrick J. Bonner, of counsel), for defendants.

## OPINION

ROBERT J. WARD, District Judge.

This is a personal injury action under the Jones Act, 46 U.S.C. § 688, the general maritime law, and various safety statutes and regulations for compensatory and punitive damages and for maintenance, cure and wages. Defendants have moved to transfer this action to the District Court for the District of Maine pursuant to 28 U.S.C. § 1404(a).[1] For the reasons that follow, defendants' motion is denied.

## BACKGROUND

Plaintiff's complaint alleges that on March 19, 1986, while he was employed as a third officer aboard the S/T St. Emilion, which is owned, operated, organized, controlled, equipped and manned by the defendants, he suffered serious injuries due to the gross carelessness and negligence of the defendants, their employees and their agents. The pleadings indicate that, while the vessel was in port in California, an accident occurred during a lifeboat drill when a wire fall supporting a lifeboat parted. Plaintiff sustained serious injuries by falling more than fifty feet from the lifeboat to the dock below.

Defendant Apex Oil Company ("Apex"), a Missouri partnership licensed to do business in New York, is the parent company of the other two defendants and was a cargo owner at the time of the incident. Defendant Crest Tankers, Inc. ("Crest"), a Missouri corporation, is the operator of the S/T St. Emilion. Defendant Clayton Tankers, Inc. ("Clayton"), also a Missouri corporation, is the registered owner of the vessel.

## DISCUSSION

Motions to transfer, pursuant to 28 U.S.C. § 1404(a) are directed to the discretion of the Court. *Wyndham Assoc. v. Bintliff,* 398 F.2d 614, 621 (2d Cir.), *cert. denied,* 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed. 2d 438 (1968). The factors which are decisive in deciding whether transfer is warranted are: (1) the convenience of the parties and witnesses (and the availability of process to compel the attendance of unwilling witnesses); (2) the relative ease of access to sources of proof, and other practical problems that make trial of a case easy, expeditious, and inexpensive; and (3) the interests of justice. *Somerville v. Major Exploration, Inc.,* 576 F.Supp. 902, 906 (S.D.N.Y.1983).[2] The party seeking the

---

1. Defendants originally moved to dismiss the action or, in the alternative, to transfer the case. Following a conference call with the Court with regard to discovery, the parties agreed that only the portion of defendants' motion dealing with the transfer of the action to the District of Maine would be presented to the Court at this time. For the purposes of this motion only, the Court assumes that it has personal jurisdiction over the defendants. Upon completion of discovery in this case, the Court will entertain a motion by defendants to dismiss for lack of personal jurisdiction if the facts indicate that such a motion is appropriate.

2. 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The three considerations set forth in the statute are among seven factors that were developed under the forum non conveniens doctrine and which courts have applied to transfer cases under section 1404(a). The seven traditional forum non conveniens factors are: (1) the convenience to the parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interest of justice. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *see also Schneider v. Sears,* 265 F.Supp.

transfer bears the burden of establishing that the transfer is warranted, *see Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979), and that the balance of convenience weighs clearly in his favor. *Heyco, Inc. v. Heyman*, 636 F.Supp. 1545, 1549 (S.D.N.Y. 1986). *See also Star Lines, Ltd. v. Puerto Rico Maritime Shipping Auth.*, 442 F.Supp. 1201, 1207 (S.D.N.Y.1978) (requiring a clear and convincing showing that the balance of convenience weighs strongly in favor of the transferee court). Where the balance of convenience is in equipoise, plaintiff's choice of forum should not be disturbed. *Ayers v. Arabian American Oil Co.*, 571 F.Supp. 707, 709 (S.D.N.Y. 1983); *Bastille Prop., Inc. v. Hometels of America, Inc.*, 476 F.Supp. 175, 182 (S.D.N.Y.1979). In applying these factors to the instant case, the Court finds that defendants have not met their burden and, accordingly, denies their motion to transfer.

I. *Convenience of the Parties and Witnesses*

In urging this Court to transfer this matter to the District of Maine, defendants assert that New York is an inconvenient forum because it has "absolutely no connection with this litigation." Defendants' Memorandum of Law in Support of Motion to Transfer ("Defendants' Memo"), at 8. Plaintiff, a Maine resident, claims that he chose New York because "it was believed to be the district closest to Maine in which [he] could obtain jurisdiction over all three named defendants." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Transfer ("Plaintiff's Memo"), at 4. Thus, until the instant motion was filed, plaintiff had no reason to believe that his

choice of New York was not a convenient forum for defendants. Even assuming, however, that none of the parties has any significant contacts with New York, plaintiff's choice is still entitled to some deference. *Ayers v. Arabian American Oil Co., supra*, 571 F.Supp. at 709. This is particularly true in actions brought under the Jones Act where plaintiff's choice is "an important factor." *Drees v. Lykes Bros. Steamship Co.*, 500 F.Supp. 15, 18 (S.D.N.Y.1980) ("Shipping companies that, like defendant, maintain worldwide operations must be prepared to defend actions in places other than their corporate headquarters."). *See also Lykes Bros. Steamship Co. v. Sugarman*, 272 F.2d 679, 682 (2d Cir.1959).[3]

With respect to the convenience of the witnesses, defendants allege that while there are no party or non-party witnesses in New York, there are numerous witnesses in Maine. Specifically, defendants contend that Maine is the most convenient forum because crew members who witnessed the accident, crew members familiar with equipment, plaintiff's treating physician, employment experts, and plaintiff are all residents of Maine. Defendants' Memo at 10.

Analyzing defendants' argument, it is clear that Maine is not as convenient as defendants wish the Court to believe. While it is true that Maine is the residence of some of the witnesses, the majority of the most important witnesses reside in neither Maine nor New York, but rather in a number of other states such as Massachusetts, Florida, Connecticut, Texas, and California. A number of these witnesses, who are seamen, are not even in their home state, but on vessels traveling to different

257, 263 (S.D.N.Y.1967) (forum non conveniens factors applied to transfer motion under § 1404(a)). To the extent that these factors are relevant to the facts of this case, the Court considers them in its three-prong analysis.

3. In *Lykes Bros. Steamship Co. v. Sugarman*, 272 F.2d 679, 681 (2d Cir.1959), a seaman injured in foreign waters brought an action against Lykes in the Southern District of New York. Defendant moved to transfer the action to the Eastern District of Louisiana claiming that both parties

were Louisiana residents and that Louisiana was more convenient for the majority of the witnesses. The Second Circuit affirmed the district court's decision not to transfer the case, stating it would be "strange, if not daring, for an appellate court to rule substantially as a matter of law that a seaman's claim for injuries—that most transitory of all actions usually heard in whole or in part on deposition evidence—must be considered chained to a single spot, to wit, the home base of the employer." *Id.*

parts of the world. As for the witnesses from Maine, it appears that these witnesses have already been deposed or are presently sailing.

Under these circumstances, the convenience of the witnesses is a less important consideration. As noted by the court in *Drees v. Lykes Bros. Steamship Co., supra,* 500 F.Supp. at 18, "[w]hen the testimony of seamen is required, however, the weight given to the convenience of the witnesses may be diminished in view of the fact that their testimony is often in the form of depositions." It is likely that the testimony of many of the seamen in this case will be taken by deposition on their ships. Therefore, the residence of these witnesses should not affect plaintiff's choice of forum.

Even more compelling is the significant likelihood that the vessel upon which plaintiff was injured will call in New York during the pendency of this litigation. Since plaintiff's accident, the vessel has called in New York six times. Apparently, the vessel has called in Maine less frequently than in New York. *See* Defendants' Reply Affidavit at 3. Since defendants have given the Court no reason to believe that the ship will call in Maine in the near future, it may actually be significantly more convenient for witnesses who are on the ship to be deposed in New York. It is very unlikely that any of these seaman witnesses, even if they are Maine residents, will be available for depositions in Maine. Although defendants argue that crew members are frequently on vacation and are likely to be in Maine at the time of trial, the Court finds no evidence in the record indicating that seamen necessarily spend their leisure time at home.

With regard to treating physicians and other medical witnesses, it appears that, at least with respect to some of these witnesses, Maine would be a more convenient forum. However, this factor becomes less significant in that New York, as a major transportation center, would be a more convenient forum for a number of medical witnesses who reside in California.

■ Defendants' contention that the case should be transferred because a number of expert witnesses reside in Maine is without merit. The location of expert witnesses is entitled to little or no weight in deciding a transfer motion. *Matra et Manurhin v. International Armament Co.,* 628 F.Supp. 1532, 1536 (S.D. N.Y.1986); *Helfant v. Louisiana & Southern Life Ins. Co.,* 82 F.R.D. 53, 58 (E.D.N. Y.1979); *McCrystal v. Barnwell County,* 422 F.Supp. 219, 224 (S.D.N.Y.1976).

As for the location of plaintiff, defendants cannot argue that New York is an inconvenient forum simply because plaintiff is a Maine resident. Obviously, since plaintiff selected New York as his forum, plaintiff is satisfied that this district is convenient. *See Motown Record Corp. v. Mary Jane Girls, Inc.,* 660 F.Supp. 174, 175 (S.D.N.Y.1987) (even when a plaintiff is not a resident of the chosen forum, his choice is still entitled to significant weight).

With respect to the availability of process, defendants argue that there are no witnesses in New York either willing or unwilling to testify. Defendants contend that if the action proceeds in Maine, they can subpoena doctors, former crew members, and others familiar with plaintiff's abilities prior to and after the accident.[4] Defendants' Memo at 11. With the exception of the medical personnel, the availability of process in Maine is an illusory advantage. As noted above, the vast majority of witnesses are scattered around the United States or sailing somewhere in the world in

---

4. With respect to this category of witness, defendants do not name any specific individuals whom they intend to call. By making purely conclusory allegations, defendants completely ignore this circuit's requirement that the movant specify key witnesses to be called along with a general statement of the substance of their expected testimony. *See Factors Etc. Inc. v. Pro Arts Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d

455 (1979); *Leasing Serv. Corp. v. Patterson Enters.,* 633 F.Supp. 282, 284 (S.D.N.Y.1986).

Even forgiving defendants' failure to specify the individuals from Maine who could testify about plaintiff's abilities prior to or after the accident, the preferences of these parties would not affect the Court's decision in light of the many other factors which mandate that plaintiff's choice of forum be upheld.

a vessel which calls in Maine only infrequently.

In sum, with respect to this factor, the Court finds that defendants have not met their burden of showing that Maine would clearly be a more convenient forum for the parties or the witnesses. At best, the balance of convenience is in equipoise.

## II. *Relative Ease of Access to Sources of Proof*

■ Defendants aver that transfer to the District of Maine is appropriate because there are no sources of proof in New York. They contend that significant sources of proof such as medical and employment records and employment experts are available in Maine. Defendants' Memo at 10; Defendants' Reply Memo at 3. In essence, defendants claim that it would be less costly to conduct the litigation where duplication and transportation of documents would not be necessary and where expert witnesses reside. As noted above, the location of expert witnesses is of little concern to this Court. With respect to the medical and employment documents, defendants have neither identified with any specificity the documents they intend to request nor demonstrated that the transportation and production of these documents would be unduly burdensome. Accordingly, the Court cannot give serious consideration to defendants' assertions. *See Somerville v. Major Exploration, Inc.,* 576 F.Supp. 902, 908 (S.D.N.Y.1983).

In addition, there is a significant chance that the vessel, a major source of proof, will call in the New York area. Even if the vessel does not call in New York, it does not appear that gathering proof in New York would be any more difficult than gathering proof in Maine. A number of sources of proof are located outside of both Maine and New York. For example, defendants' business records are located in Missouri and some medical records are located in California. With respect to these sources of proof, both forums are somewhat inconvenient.

Defendants further maintain that because there are no witnesses located in New York, the costs of pursuing this action in New York will be greater than in Maine. Defendants' Memo at 11. However, as noted above, it is not clear where many of the witnesses are actually located. If the vessel does call in New York, New York will be a less expensive forum. If not, New York might still be more accessible than Maine to witnesses from Missouri and California. In any event, due to the uncertainty of where the witnesses will be when needed, defendants have not met their burden of demonstrating that New York is clearly less accessible.

Finally, defendants complain that if the action proceeds in New York and if there is a need to take depositions in Maine, they will be disadvantaged. Specifically, defendants claim that while plaintiff can simply use his Maine attorney for the deposition, defendant must send his New York counsel to Maine or use local counsel, incurring additional expense and possible prejudice. Defendants' Memo at 12.

The Court finds defendants' contentions to be lacking in merit. Initially, the Court is puzzled by defendants' argument that depositions in Maine would be expensive if they used New York counsel or if they retained local counsel. Presumably, if the action was transferred to Maine, the same depositions would need to be taken and defendants' attorneys from New York would still be coming to Maine and taking them. Even if defendants intend to discharge their New York counsel and hire Maine counsel, it would appear to be equally expensive to get a new attorney up to speed at this stage of the litigation. Defendants argument that they will be prejudiced by having different attorneys is also frivolous. Since some discovery has already occurred in this case, whether defendants intend to hire local counsel or

discharge New York counsel and hire Maine counsel makes little difference. Under either scenario, they will be using different attorneys to conduct the discovery and try the case. In fact, since plaintiff already has counsel in both New York and Maine, any prejudice which exists in having different attorneys conduct discovery and bringing the case to trial will be the same on both sides. If defendants, however, choose to have their New York counsel travel to Maine for depositions, they will have the same attorney for discovery and trial and will clearly suffer no prejudice.

■ Defendants' attempt to make their attorney's inconvenience a factor in the Court's determination is inappropriate. The convenience of attorneys is not entitled to great weight on a motion to transfer. *Leasing Serv. Corp. v. Patterson Enters.*, 633 F.Supp. 282, 284 (S.D.N.Y.1986); *Essex Crane Rental v. Vic Kirsch Constr.*, 486 F.Supp. 529, 536 (S.D.N.Y.1980). Attorneys frequently travel to attend depositions all over the world and if the cost or inconvenience of traveling is too burdensome, local counsel can be employed.

Accordingly, the Court is not convinced that transferring the case to Maine would result in either easier access to sources of proof or a more expeditious and inexpensive trial.

### III. *The Interests of Justice*

■ With respect to the interests of justice, plaintiff argues that because three of the four months allocated for discovery have passed, defendants' motion is untimely. Plaintiff claims that he has spent time and money retaining experts to testify in New York during the discovery period and, therefore, will be prejudiced if the case is sent to Maine and more discovery is permitted. Plaintiff's Memo at 12. Although delay can be a factor in the Court's determination, there is "no *per se* rule prohibiting a change of venue merely because a motion to transfer is filed some time after

suit is commenced and some progress is made on the pre-trial phase of the case." *Essex Crane Rental v. Vic Kirsch Constr.*, *supra*, 486 F.Supp. at 535. The Court believes that the delay in this case has not been significant enough to support a finding that the interests of justice favor New York as the forum in this action.

Defendants similarly assert that the interests of justice favor their choice of forum. They argue that because New York has no local interest in the suit, it is unjust to subject the citizens of this district to jury service. Defendants also contend that transfer is warranted because the docket in the District of Maine is less congested than the docket in this district. Defendants' Memo at 13.

As noted above, even where none of the parties has any contacts with a forum, a plaintiff's choice is still entitled to deference and it is still the movant who has the burden of persuasion with respect to a transfer. As the Court has stated, thus far, defendants have not met their burden.

■ Finally, the Court takes issue with defendants' contention that a trial could be held earlier in Maine than in New York. Although the statistics indicate that the median time from joinder of issue to completion of trial in the Southern District of New York is 17 months while the median time in Maine is only 9 months, *see* The Annual Report of the Director of the Administrative Office of the United States Courts for the Fiscal Year Ending June 30, 1987, at 37, 48, this Court is confident that, absent an emergency, the condition of its docket would permit a trial of this case as soon as the parties are ready to proceed. *See National Super Spuds v. New York Mercantile Exch.*, 425 F.Supp. 665, 668 (S.D.N.Y.1977). Even if this Court's calendar was not as current as it is, it is well-settled that the docket conditions of a District Court's calendar are "merely accorded some weight and are not decisive in the determination of a transfer motion." *Fos-*

*ter v. Litton Indus., Inc.,* 431 F.Supp. 86, 88 (S.D.N.Y.1977). *See Motown Record Corp. v. Mary Jane Girls, Inc., supra,* 660 F.Supp. at 174. This is particularly true where, as here, the other factors are at best equally balanced between the plaintiff's and defendants' choices of forum. *See DCA Food Indus., Inc. v. Hawthorn Mellody, Inc.,* 470 F.Supp. 574, 586 (S.D.N.Y.1979).

## CONCLUSION

Inasmuch as the defendants have failed to demonstrate that the balance of convenience weighs strongly in favor of the District of Maine, the Court will not disturb plaintiff's choice of the Southern District of New York as the forum. Accordingly, the within motion by defendants is denied. The parties are directed to complete discovery by February 5, 1988 and file a joint pretrial order by March 4, 1988.

It is so ordered.